# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**VFW JOHN O'CONNOR POST # 4833,**
  **a Florida non-profit corporation,**

               **Plaintiff,**

**v.**                                                    **Case No. 3:06cv152/MCR**

**SANTA ROSA COUNTY, FLORIDA,**
  **a political subdivision of the State of Florida,**

               **Defendant.**

_____/

## O R D E R

This cause is before the court on the cross motions for partial summary judgment filed by plaintiff VFW John O'Connor Post # 4833 ("the Post") and defendant Santa Rosa County, Florida ("the County"), to which motions the parties have filed responses.[1]   For the reasons and to the extent set forth below, the court GRANTS the County's motion.

## BACKGROUND

The following facts are recited in the light most favorable  to plaintiff or, except as noted, are undisputed.[2]   The Post is a non-profit corporation located in Milton, Santa Rosa

---

[1] See docs. 24, 25, 26, 27, 31, and 32.

[2] At summary judgment this court must view the facts in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary

County, Florida.  It currently holds a retail alcoholic beverage license issued by the State of Florida for the on-premises sale and consumption of beer and wine containing no more than 6.243% alcohol, or 5% by weight ("beer and wine").  The Post held this license at the time the voters of Santa Rosa County approved by referendum the sale of liquor, i. e., beverages containing more than 6.243% alcohol, or 5% by weight.  The Post now wishes to apply to the State of Florida for an enlargement of its alcoholic beverage license that would permit it to sell liquor in addition to beer and wine.  As part of its application to the State the Post is required to submit proof of compliance with the County's zoning requirements, specifically in this case a certificate of zoning compliance or waiver.[3]

Section 7.01.13 of the Santa Rosa County Land Development Code ("LDC"), provides for the regulation of vendors selling liquor, beer, or wine for on-premises consumption in Santa Rosa County.[4]   Section 7.01.13(A)(1) sets forth a distance

---

materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

[3] If the Post were to obtain the enlargement to its current license it seeks, it would not receive a new license from the State of Florida.  Rather, the Post's existing license simply would be increased in series number to reflect that it is authorized to sell liquor.  Other than the certificate of zoning compliance or waiver, the State imposes no additional requirements on the Post to increase the alcoholic beverages license that are relevant to this cause of action.

[4] While the evidence reflects some fluctuation in the parties' positions during the course of this litigation, they apparently now do not disagree that the ordinance pursuant to which the Post's application was denied is Santa Rosa County Ordinance 95-21, Chapter 3, § 3-3, now codified at § 7.01.13 of the Santa Rosa LDC.  Ordinance 95-21 is the adopting ordinance for the Santa Rosa County, Florida, Code, which includes Ordinance 89-04, otherwise identified as § 3-3. The parties agree that the relevant provisions of Chapter 3, § 3-3, and § 7.01.13 are identical in content.  Accordingly, for the purpose of this order, the court accepts that the two provisions are identical, and it refers to § 7.01.13 as the challenged provision pursuant to which the Post's application was denied.
    Section 7.01.13, Distance Requirements from Churches and Schools for Vendors Selling Alcoholic Beverages for On-Premises Consumption, in its entirety provides:
A. Permit Required- No vendor shall sell liquor, beer or wine for on-premises consumption in the unincorporated areas of the County without first obtaining a Certificate of Zoning Compliance from the Public Services Department.
    1. No Certificate of Zoning Compliance shall be granted to a vendor for the sale of liquor, beer or wine for on-premises consumption in any area of Santa Rosa County, lying without the limits of incorporated cities or towns, when said place of business is within 2,500 feet of an established church or school. However, this section shall not apply to licenses defined in s. 563.02(1)(a) and s. 564.02(1)(a), F.S., or any restaurant equipped to serve at least thirty-five (35) persons full-course meals at tables at one time, and deriving at least 51% of its gross revenues from food and non-alcoholic beverages.
    2. A Certificate of Zoning Compliance shall not be denied to the transferee of the license

requirement of 2500 feet between vendors who sell liquor, beer, or wine and established churches or schools. Subsection (E), Waiver of Distance Requirements, in part provides that the Santa Rosa Board of County Commissioners ("the Board") may waive the distance requirements "upon a proper showing by the applicant that the Board should waive such requirement." § 7.01.13(E), Santa Rosa County LDC.  Pursuant to subsection (D), in addition to a fee of $25.00 which must accompany the application for certificate of zoning compliance, applicants seeking a waiver of the distance requirements must also submit an extra fee of $25.00 "for the purpose of offsetting the cost of confirming whether any affected churches or schools have consented to the waiver . . . ."  § 7.01.13(D), Santa Rosa County LDC.

The Post's place of business is located within 2500 feet of two churches.  It submitted an application to the County for zoning approval and/or a waiver of the zoning requirements that would permit it to sell liquor.  In January 2006 the application was

---

holder if the transferee operates the business at the same location and applies for the Certificate of Zoning Compliance within sixty (60) days of the last day of business of the transferor at said location.

B. Distance Measurements - The distance as set forth in subpart A above shall be measured by following the shortest route of ordinary pedestrian travel along the public thoroughfare from the main entrance of said place of business to the main entrance of the church or, in the case of a school, to the nearest point of the school grounds in use as part of the school facilities.

C. Establishment of New Churches or Schools - Whenever a licensee has procured a license permitting the sale of liquor, beer or wine and thereafter a church or school is established within a distance otherwise prohibited by this Ordinance, of the place of business of thelicensee, the establishment of such church or school shall not be cause for the revocation of [the license of] such licensee and shall not prevent the subsequent renewal of such license. However, no existing license may be transferred to within the distance from churches or schools prohibited by this Ordinance.

D. Application Fee - Any application for a Certificate of Zoning Compliance under this section shall be accompanied by a fee of $25.00 to be credited toward the County General Fund, which fee is intended to offset the cost of ascertaining whether the provisions of this section are applicable. If the applicant seeks a waiver of the provisions of the distance requirements set forth hereinabove, an additional fee of $25.00 shall be required of the applicant, which fee shall be for the purpose of offsetting the cost of confirming whether any affected churches or schools have consented to the waiver of the provisions of subpart A above.

E. Waiver of Distance Requirements - The Board of County Commissioners may, at a regular or special Board meeting or public hearing, waive the distance requirements in subpart A above upon a proper showing by the applicant that the Board should waive such requirement. The Board may require that the applicant, at his own expense, give written notice to the appropriate person(s) affected by his application and may require that notice of intent to petition for a waiver of the requirement be published in a newspaper of general circulation in Santa Rosa County, Florida, at least fifteen (15) days prior to such regular or special Board meeting or public hearing. The notice shall state the name of the applicant, the nature of his request and the place and time the Board will hear such application.

Section 7.01.13, Santa Rosa County Land Development Code.

discussed at a meeting of the Santa Rosa County Public Services Committee as well as a meeting of the Board.  Relying upon the distance requirements contained in § 7.01.13, the Board denied the Post's application.[5]

In its complaint filed pursuant to 42 U.S.C. § 1983,[6] the Post seeks a judicial determination that § 7.01.13 of the Santa Rosa LDC is unconstitutional because it violates rights protected by the First, Fifth, and Fourteenth Amendments.  Count I of the complaint alleges the violation of the Establishment Clause due to the unconstitutional delegation of legislative power to churches.  Count II alleges the violation of the Equal Protection Clause, based on § 7.01.13's lack of an ascertainable standard for obtaining a waiver to the distance requirements and its grant of authority to churches to withhold their consent to such waiver.  Counts III, IV, and V are claims for the violation of the Due Process Clause; they assert that § 7.01.13 is facially invalid (Count III), is invalid as applied (Count IV), and offends substantive due process (Count V).  These counts, which contain virtually identical assertions, allege that § 7.01.13 fails to provide standards for assessing the denial of waivers by the Board and the refusal to consent by churches and that it vests unbridled discretion in decisionmaking by the Board and/or churches.  As relief for the alleged violations of its rights, the Post seeks a preliminary and permanent injunction, a declaratory judgment, damages, and attorneys' fees.

The Post has moved for summary judgment as to Counts 1, 3, and 4 only of its complaint.  The County has also moved for partial summary judgment.  It does not seek judgment as to specific counts of the Post's complaint but rather requests a declaratory judgment that upholds the validity of § 7.01.13's distance requirements and severs any unconstitutional portions of the ordinance, leaving the distance requirements intact.

---

[5]  The Post contends that the Board was not presented with evidence of any objections to granting a waiver of the distance requirements but the County apparently disputes this assertion. It is undisputed that during the meetings several County Commissioners commented on the Post's applications; one Commissioner stated he was "not interested in granting a variance or waiver" to the Post while another indicated that the Post was "going to have to convince [me] why the variance or waiver was a good thing." Other comments included that "[t]he ordinance is a county policy with no exceptions because an exception would open up a Pandora's box"; "I will never vote in favor of a request to deviate from the distance requirements"; and "[t]his whole case is about County policy that says we have to recognize 2500 feet as a buffer."

[6]  The Post invokes the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and its authorization to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02.

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.  Although evidence presented in opposition to the motion for summary judgment, and all factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party, Adickes, 398 U.S. at 157; Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999), a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991).  Moreover, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252.

### DISCUSSION

As an initial matter, although the parties' summary judgment papers do not address this issue, the court shall briefly discuss its jurisdiction to consider the Post's claims.

Article III of the United States Constitution requires federal courts to consider only actual cases and controversies.  U.S. Const., Art. III; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  Part of the cases or controversies limitation includes the doctrine of standing, which consists of constitutional as well as prudential requirements. See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1309 (11th Cir. 2000). The party invoking federal jurisdiction bears the burden of proving constitutional standing.  See Lujan, 504 U.S. at 561. To meet his constitutional burden, the party must show injury-in-fact, causation, and redressability. See Northeastern Florida Contractors v. Jacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).  Three prudential principles also bear on standing.   The party's claim must fall "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question"; the claim must be for injury to the party's own legal rights and interests, rather than the legal rights or interests of third parties; and the injury must be individualized or confined to a discrete group. See, e.g., Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

In this case, the Post has shown that it has suffered an actual or threatened injury in the form of the denial of the distance requirements waiver, that this injury is fairly traceable to the challenged conduct of the County, and that such injury is likely to be redressed by a favorable ruling. Lujan, 504 U.S. at 560-61.  Furthermore, the Post's claims fall within the zone of interests protected by the relevant provisions of § 7.01.13 and implicate individualized injuries to the Post's own legal rights and interests.  Thus the court concludes that the Post has satisfactorily established its standing to challenge § 7.01.13 of the Santa Rosa County LDC.

**Count I: Establishment Clause**

The Post primarily relies on Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and Larkin v. Grendel's Den, Inc., 459 U.S. 11, 103 S.Ct. 505, 74 L.Ed. 297 (1982), for its argument that § 7.01.13 fails to achieve neutrality toward religion and thus violates the Establishment Clause.  More specifically, the Post contends that the ordinance unconstitutionally delegates to churches the County's exercise of legislative

discretion to deny zoning approval.[7] The County responds that the waiver provision in § 7.01.13 is factually distinguishable from the waiver provision at issue in Larkin and is not constitutionally deficient.

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion."[8] U.S.C.A. Const. Amend. 1.  The Supreme Court recently reiterated that the "touchstone" for Establishment Clause analysis is "that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." McCreary County, Kentucky, v. ACLU, 545 U.S. 844, 125 S.Ct. 2722, 2733, 162 L.Ed.2d 729 (2005) (internal quotation marks and other citations omitted).  When assessing the permissibility of statutes under the Establishment Clause, courts should apply the three-pronged test first articulated by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1972)[9]; see also Board of Education of Kiryas Joel Village School District v. Grumet, 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994).  Pursuant to the Lemon test, government action survives an Establishment Clause challenge if it (1) has a secular purpose, (2) has a primary effect of neither advancing nor inhibiting religion, and (3) does not foster excessive government entanglement with religion.  See Lemon, 403 U.S. at

---

[7] According to the Post, the ordinance inextricably entwines churches in the affairs of government by requiring the payment of fees to ascertain whether the church has consented to waiver of the distance requirements.  The Post further complains that the ordinance improperly requires applicants to give notice to an affected church at their own expense of any hearing to consider a waiver as well as to publish notice of the intent to seek a waiver.  In addition, the Post contends that the primary effect of the ordinance is to advance religion because it gives churches veto power over the business that a secular authority permits and that under the ordinance the viewpoint of any affected church is entitled to substantial weight.

[8] "This restriction has been made applicable to states, as well as state-created entities and their employees, through the Due Process Clause of the Fourteenth Amendment." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1284 (11th Cir. 2004).

[9] The Eleventh Circuit has recognized that the Lemon test, though frequently criticized, has not been overruled. See Glassroth v. Moore, 335 F.3d 1282, 1296 (11th Cir. 2003); see also Cutter v. Wilkinson, 544 U.S. 709, 727 n.1, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (Thomas, J., concurring) (noting that the Supreme Court properly declined to apply the "discredited" Lemon test to an Establishment Clause challenge); Lamb's Chapel v. Central Moriches Union Free School District, 508 U.S. 384, 398, 113 S.Ct. 2141, 2150, 124 L.Ed.2d 352 (1993) (Scalia, J., concurring) ("[N]o fewer than five of the currently sitting Justices have, in their own opinions, personally driven pencils through the [Lemon test's] heart (the author of today's opinion repeatedly), and a sixth has joined an opinion doing so."); Zelman v. Simmons-Harris, 536 U.S. 639, 668-69, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (O'Connor, J., concurring) (reaffirming that the Lemon test is still the central tool of analysis in Establishment Clause cases).

612-13.  Only if all three criteria are satisfied may the law be upheld.  See Church of
Scientology Flag Service Organization, Inc., v. City of Clearwater, 2 F.3d 1514, 1527 (11th
Cir. 1993).

      Judicial review of the first prong of the Lemon is deferential. A statute is invalid only
if it "does not have a clearly secular purpose." Wallace v. Jaffree, 472 U.S. 38, 56, 105
S.Ct. 2479, 2489-90, 86 L.Ed.2d 29 (1985).  "A religious purpose alone is not enough to
invalidate an act of a state legislature. The religious purpose must predominate." Edwards
v. Aguillard, 482 U.S. 578, 599, 107 S.Ct. 2573, 2586, 96 L.Ed.2d 510 (1987) (Powell, J.,
concurring) (citations omitted). The Supreme Court has explained that a secular purpose
need not be hostile or even unrelated to religion:

> This does not mean that the law's purpose must be unrelated to religion –
> that would amount to a requirement that the government show a callous
> indifference to religious groups, and the Establishment Clause has never
> been so interpreted. Rather, Lemon's "purpose" requirement aims at
> preventing the relevant government decisionmaker . . . from abandoning
> neutrality and acting with the intent of promoting a particular point of view in
> religious matters.

Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S.
327, 335, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987) (internal citations omitted).

      In the instant case, religious purpose does not predominate in § 7.01.13.  Rather,
the ordinance clearly has a valid secular purpose, i. e., "the secular goal of protecting
churches and schools from the disruption associated with liquor serving establishments."[10]
Larkin, 459 U.S. at 124, n. 6. Thus the court concludes that § 7.01.13 satisfies Lemon's
first element.

      The court also concludes that § 7.01.13 satisfies the second and third factors set
out in Lemon.   In Larkin, the Supreme Court focused on these two factors in examining
the constitutionality of a delegation of power by the Commonwealth of Massachusetts to

---

[10]  The court finds that the Post has not come forward with direct evidence that "a sectarian or
religious purpose was a substantial or motivating factor" in the County's legislative process of enacting
§ 7.01.13. See Church of Scientology Flag Service Organization, Inc., 2 F.3d at 1529 (finding that the burden-
shifting standard set forth in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274,
283-84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977), is appropriate in applying the purpose criterion of Lemon).
Accordingly, the burden of proof does not shift to the County to show by preponderance of the evidence that
the challenged action would have been undertaken even in the absence of the improper considerations.  Id.

churches and schools to veto applications for liquor licenses.  See Larkin, 459 U.S. at 117. The Court held that the disputed statute failed the Lemon test and violated the Establishment Clause because it both fostered excessive entanglement of government with religion and had the effect of advancing religion.  The Court found the statute had the primary effect of advancing religion because "[t]he churches' power under the statute [was] standardless, calling for no reasons, findings, or reasoned conclusions. That power may therefore be used . . . for explicitly religious goals . . . ." Id. at 125.  The Court also stated that "the mere appearance of a joint exercise of legislative authority by Church and State provides significant benefit to religion in the minds of some by reason of the power conferred." Id. at 125-26.  In addition, the Court concluded the statute created excessive entanglement of religious and secular affairs by "enmesh[ing] churches in the exercise of substantial governmental powers. . . ." Id. at 126.  The Court determined that the statute brought about a "fusion of governmental and religious functions" by delegating "important, discretionary governmental powers" to religious bodies, thus impermissibly entangling government and religion.  Larkin, 459 U.S. at 126, 127. The Court emphasized that "[u]nder our system the choice has been made that government is to be entirely excluded from the area of religious instruction and churches excluded from the affairs of government."  Id. at 126 (quoting Lemon, 403 U.S. at 625).

As the Post submits, Larkin is the most significant case ever handed down by the Supreme Court to deal with a statute that vests in schools and churches the power effectively to veto applications for liquor licenses within close proximity to them.[11]  Contrary to the Post's assertions, however, the statute in Larkin and the ordinance in this case are factually distinct, as § 7.01.13 does not vest such authority in schools and churches.  In Larkin, the statute specifically provided that  "[p]remises . . . located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto." Larkin, 459 U.S. at 117.  Section 7.01.13, on the other hand, simply provides for the payment of a

---

[11]  The Post asserts that Larkin is the "seminal" and "controlling" precedent for the issues presented here and is factually "on all fours" with this case. According to the Post, "the only significant factual distinction is that in Larkin a church objected; while in this case there is no record of an objection . . . .  Nonetheless, in this case, the County utilized the proximity of the VFW to a church as the reason for denial of the certificate of zoning."  (Doc. 24 at 9).

$25.00 fee to ascertain whether the applicant's place of business is within 2500 feet of a school or church and, if a distance requirement waiver is sought, a second fee of $25.00 to be used to "offset[ ] the cost of confirming whether any affected churches or schools have consented to the waiver of the provisions of subpart A above."  Section 7.01.13(D), Santa Rosa County LDC.  Accordingly, while the reasoning and discussion in Larkin are instructive here, because Larkin is factually distinguishable its application of the second and third Lemon factors does not control the result in the instant case.

Rather, as to the second prong of the Lemon test, the court concludes that §7.01.13 does not have the primary effect of advancing religion.[12]  This ordinance accords churches no authority, much less authority that could "be used . . . for explicitly religious goals. . . ." Larkin, 459 U.S. at 125.   Nor does the ordinance provide for any exercise of legislative authority by churches in conjunction with the County or give the appearance of such. See id. at 125-26.   Section 7.01.13 does not vest authority in schools or churches to veto, either expressly or effectively, an application for a liquor license or to make zoning decisions of any sort. Indeed, it vests no power with respect to zoning applications –  or any other discretionary authority –  in schools or churches. The ordinance, in neutral fashion and through the use of nominal fees used only to offset the County's costs, provides for determining the distance between liquor-serving businesses and schools and churches and for ascertaining whether they have consented to a waiver.[13] Nothing in the ordinance, however, conditions approval of a waiver upon such consent.  Indeed, as the County submits, nothing in § 7.01.13 would preclude the Board from granting a waiver even if an affected school or church objected or refused its consent.[14] Thus, contrary to the Post's contention, the ordinance does not give churches veto power over zoning decisions

---

[12]  Whether the ordinance inhibits religion is not at issue in this case.  Nevertheless, the court finds the ordinance neutral in this respect.

[13]  Although government entities cannot tax First Amendment rights, they may exact narrowly tailored fees to defray the administrative cost of regulation. See Cox v. New Hampshire, 312 U.S. 569, 576-77, 61 S.Ct. 762, 765-66, 85 L.Ed. 1049 (1941).  The County's nominal fees, which total $50.00, satisfy this requirement.

[14]  Indeed, the court notes that the minutes of a meeting of the Public Works Committee in 1994, when the Post sought to reinstate its expired alcoholic beverages license, reflect that despite opposition voiced by a nearby church the Committee voted to grant the waiver sought by the Post.  (Doc. 25-8 at 25).

nor does it grant substantial weight to the viewpoint of any affected churches with respect to such zoning decisions.  Furthermore, the distance requirements in § 7.01.13 do no more than convey the County's desire to protect or insulate churches and schools from the disruption associated with liquor-serving establishments.  That message reflects a valid secular interest in appropriate zoning laws, not an improper interest in promoting religious points of view. See Lynch v. Donnelly, 465 U.S. 668, 687-88, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring) (stating that Lemon's second prong effectively asks whether "the practice under review in fact conveys a message of endorsement or disapproval.").  Finally, the ordinance provides churches with a benefit that is also provided to secular institutions, i. e., schools.  The Establishment Clause does not bar the extension of general benefits to religious groups. See Widmar v. Vincent, 454 U.S. 263, 273, 102 S.Ct. 269, 276, 70 L.Ed.2d 440 (1981) (reiterating that a religious organization's enjoyment of merely "incidental" benefits does not violate the prohibition against the "primary advancement" of religion).

For essentially the same reasons that apply to the "effect" prong of the Lemon test, the court further concludes that § 7.01.13 does not foster excessive government entanglement with religion.[15]  While the ordinance provides for, and anticipates that the Board may receive, input from churches and schools regarding zoning decisions pertaining to the sale and on-premises consumption of alcoholic beverages near them, it does not improperly "enmesh churches in the exercise of substantial governmental powers. . . ." Larkin, 459 U.S. at 126.  Indeed, as previously discussed, the ordinance grants churches no authority whatsoever with regard to zoning decisions.[16] Id. at 126.  Moreover, as a

---

[15]  In Agostini v. Felton, 521 U.S. 203, 222-23, 234, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), the Supreme Court folded together the "excessive entanglement" inquiry into the "effect" prong, stating that "the factors we use to assess whether an entanglement is 'excessive' are similar to the factors we use to examine 'effect.' . . . it is simplest to recognize why entanglement is significant and treat it . . . as an aspect of the inquiry into a statute's effect." See Mitchell v. Helms, 530 U.S. 793, 807-08, 120 S.Ct. 2530, 147 L.Ed.2d 660 (2000) (Thomas, J., plurality); see also Mitchell, 530 U.S. at 844-45 (O'Connor, J., concurring).  Following Agostini the Eleventh Circuit has described the substance of the Supreme Court's Establishment Clause jurisprudence as "remain[ing] fundamentally unaltered." Glassroth, 335 F.3d at 1286.

[16]  The Post also points to the notice provisions contained in subsection (E), Waiver of Distance Requirements, in support of its contention that § 7.01.13 violates the Establishment Clause.  This subsection provides that the Board has the authority to waive the distance requirements and "may require that the applicant, at his own expense, give written notice to the appropriate person(s) affected by his application and

general matter, "the Establishment Clause was intended to afford protection [against] 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" Lemon, 403 U.S. at 612.  The ordinance's distance requirements implicate no financial support or day-to-day involvement with religious groups and thus in these respects also provide no basis for concluding that it creates an excessive entanglement problem.

For all of the above reasons, the court is persuaded that § 7.01.13 of the Santa Rosa LDC survives an Establishment Clause challenge under the Lemon test.  In sum, as to Count I of the complaint, the County has shown "an absence of evidence to support the nonmoving party's case," Celotex Corp., 477 U.S. at 325, and the Post has failed to "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark, 929 F.2d at 608.  Accordingly, the County is entitled to summary judgment in its favor with respect to Count I.

## Counts III and IV: Due Process Clause

The Post also makes a facial due process challenge to § 7.01.13.  It argues that the ordinance permits the Board to waive the distance requirements upon a "proper showing" that a waiver should be granted but fails entirely to define the criteria for that standard. According to the Post, because the decision of whether to grant a distance waiver is left to the unbridled discretion of the Board, § 7.01.13(E) is void for vagueness.  Furthermore, the Post argues, the offending provision cannot be severed because it is "inextricably intertwined" with the remainder of the ordinance" and "the County structured the ordinance so that the waiver provisions were essential to the application for a certificate of zoning." (Doc. 31-1 at 3).  The County argues that the waiver provision of § 7.01.13 is not unconstitutional but, if this court were to conclude otherwise, that the provision is severable.

The typical procedure for constitutional challenges to a regulatory or statutory provision is to first test the provision for constitutionality.  If the regulation is found

---

may require that notice of intent to petition for a waiver of the requirement be published in a newspaper of general circulation . . . ."

Although this subsection does not specifically name churches or schools, or their representatives, as "appropriate persons," this reference can be inferred.  In any event, the cited language speaks only to providing notice.  It does not vest any authority in schools or churches to deny waivers or otherwise implicate them in the decisionmaking process.

unconstitutional, the court must then determine whether the constitutionally offensive provision can be severed from the rest of the regulation.  See New York v. United States, 505 U.S. 144, 186, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992).  The court proceeds accordingly in this case.

In contrast to a claim that a statute is unconstitutional "as applied," in which a party asserts that application of the statute to his particular circumstances would be unconstitutional, a facial challenge seeks to secure a declaration that a statute is utterly inoperative.  See Ada v. Guam Soc'y of Obstetricians and Gynecologists, 506 U.S. 1011, 1012, 113 S.Ct. 633, 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting); see also Horton v. City of St. Augustine, 272 F.3d 1318, 1329 (11th Cir. 2001) (stating that "[a] facial challenge, as distinguished from an as-applied challenge, seeks to invalidate [an ordinance] itself.").  In order to show that an ordinance is facially invalid, "the challenger must establish that no set of circumstances exist under which the [ordinance] would be valid." Id. at 1329 (citation and internal quotation marks omitted); see also Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 497, 102 S.Ct. 1186, 1191-92, 71 L.Ed.2d 362 (1982) (noting that facial challenge for vagueness will fail unless the statute "is impermissibly vague in all of its applications"). Vague laws present two kinds of problems.  The first is that a person of ordinary intelligence may be unable to determine how to conform his conduct to the law; the second is that the lack of explicit standards may result in persons charged with enforcement of the law acting arbitrarily and discriminatorily. See Grayned v. City of Rockford, 408 U.S. 104,  108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); United States  Civil Service Commionn v. National Assocation of Letter Carriers, 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).  A plaintiff must establish that the challenged ordinance is "'so vague and indefinite as really to be no rule or standard at all.'" Seniors Civil Liberties Ass'n, Inc. v. Kemp, 965 F.2d 1030, 1036 (11th Cir. 1992) (quoting Boutilier v. INS, 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967)).

The ordinance at issue in this case may be said to implicate both types of problems discussed above. Under § 7.01.13(E), the Board may waive the distance requirements "upon a proper showing by the applicant that the Board should waive such requirement." Because this waiver provision lacks any criteria for applying the "proper showing" standard,

this subsection is so vague and indefinite as to provide no guidance for persons seeking to comply with its requirements. The waiver provision of the ordinance is not "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with . . . ." National Association of Letter Carriers, 413 U.S. at 579. Furthermore, § 7.01.13(E)'s lack of any identifiable criteria for applying the standard could result in its arbitrary or discriminatory application by those charged with its enforcement. See Grayned, 408 U.S. at 108.  In short, the ordinance's "proper showing" standard is "really [ ] no rule or standard at all." Seniors Civil Liberties Association, Inc. 965 F.2d at 1036.  Accordingly, the court finds that on its face the waiver provision set forth in § 7.01.13(E) is unconstitutional.

"Severability of a local ordinance is a question of state law. . . ." City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); see also Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1347 (11th Cir. 2004).  As explained by the Eleventh Circuit, "Florida law clearly favors (where possible) severance of the invalid portions of a law from the valid ones." Coral Springs Street Systems, Inc., 371 F.3d at 1347 (quoting Ray v. Mortham, 742 So.2d 1276, 1280 (Fla. 1999)). Moreover, under Florida law, "[a]lbeit not binding, a legislatively expressed preference for the severability of voided provisions is persuasive." Id. at 1349 (citing Moreau v. Lewis, 648 So.2d 124, 127 (Fla.1995)); see also Seay Outdoor Advertising, Inc. v. City of Mary Esther, Florida, 397 F.3d 943, 950 (11th Cir. 2005) (noting that Florida law directs that deference be paid to a legislatively expressed preference for severance of voided provisions).   The Florida Supreme Court has articulated a four-part test for severability. "When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided:  (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the  legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken." Id. at 1348 (quotation omitted)).

The court concludes that § 7.01.13(E) is severable from the rest of § 7.01.13. First, the court notes that both the Santa Rosa County Ordinance Book and Ordinance 89-

04, the first iteration of the distance requirements ordinance, contain severability clauses. (See doc. 26, exhs. 2 and 3).  As to the four-part severability test, the court finds that § 7.01.13(E) is a discrete section of the ordinance and can easily be separated from the remaining valid provisions.  In addition, although § 7.01.13 contains no express statement of purpose, its legislative purpose of  protecting churches and schools from the disruption associated with liquor serving establishments is implicit in the valid provisions and can be accomplished independently of   § 7.01.13(E).   Section 7.01.13 also remains an act complete in itself absent the invalid § 7.01.13(E) as, pursuant to Larkin, the County is entitled to ban alcoholic beverages entirely within a reasonable distance from schools and churches.[17]  See Larkin, 459 U.S. at 1348 (indicating that "an absolute legislative ban on liquor outlets within reasonable prescribed distances from churches, schools, hospitals, and like institutions" would be valid).  Moreover, the ordinance continues to require, and to provide an adequate procedure for, vendors who desire to sell liquor, beer, or wine for on-premises consumption to obtain a certificate of zoning compliance from the County for properties that are not within 2500 feet of a school or church.[18]

While a closer question, the court also concludes that excising § 7.01.13(E) from the rest of the distance requirements ordinance does not run afoul of the third prong of the Florida severability test.  As the Post contends, at present it is permitted to sell beer and wine, which suggests that in enacting § 7.01.13 it was the Board's intent to provide for waivers of the distance requirements provision.  Nevertheless, because § 7.01.13 evinces a clear interest in insulating churches and schools from the disruption associated with the service of alcoholic beverages, the court concludes that the Board would have enacted an ordinance banning such beverages within 2500 feet of schools and churches even had it

---

[17]    Contrary to the Post's contention, the waiver provision in Larkin was not the "mechanism that ensured some degree of 'reasonableness.'" (Doc. 31-1 at 2).  The Court indicated that a total ban on liquor outlets within a reasonable distance from schools and churches, absent any provision for waivers, would pass constitutional muster.  The Post has not made the argument that a distance as great as 2500 feet is unreasonable but even if it had, based on Larkin the court would disagree.

[18]    Section 7.01.13 remains an act complete in itself after striking § 7.01.13(E), notwithstanding the fee provision in § 7.01.13(D) that applies to applicants seeking waivers.  Even with no provision for obtaining a waiver of the distance requirements remaining in the ordinance, the widowed reference to an additional $25.00 fee in § 7.01.13(D) simply becomes extraneous or lacking effect rather than making the entire ordinance fatally defective.

known that the waiver provision would be declared unconstitutional. The court does not believe that, in light of the basic purpose of § 7.01.13, the Board would have preferred no ordinance at all to an ordinance "standing by itself [which is] capable of functioning on its own [and which] still helps to achieve that basic objective." Denver Area Educational Telecommunications Consortium, Inc. v. Federal Communications Commission, 518 U.S. 727, 768, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (plurality opinion). Because the general ordinance and the waiver are sufficiently separable in substance, the court concludes that "it can be said that the [the Board] would have passed the one without the other." Coral Springs Street Systems, Inc., 371 F.3d at 1348. The court thus finds that the invalid § 7.01.13(E) is severable from the remainder of § 7.01.13.[19]

The court turns next to the Post's as applied challenge to § 7.01.13. The Post asserts that any decision by the Board that it failed to make a proper showing for waiver is "unilateral, arbitrary, and capricious." (Doc. 24 at 18). The Post also contends that it has a vested right in the sale of alcoholic beverages and that the County should be estopped from denying it a certificate of zoning or a waiver because it "is only proposing to do what [the] County has already consented for [it] to do: sell alcoholic beverages, albeit in a different form." (Doc. 24 at 18). According to the Post, there is no rational basis for distinguishing between beer/wine and alcohol "once any alcohol is sold within the prescribed distance." (Id.). The County argues that the Post cannot establish a vested right in the sale of liquor and that, based on the broad grant of authority contained in the Twenty-First Amendment, it may differentiate between beer/wine and liquor in regulating alcoholic beverages.

Because the court has found that the waiver provision of the ordinance contained in § 7.01.13(E) is facially unconstitutional, it follows that § 7.01.13(E) likewise is unconstitutional as applied to the Post.[20] With the excision of the offensive § 7.01.13(E),

---

[19] Having found that the waiver provision in § 7.01.13(E) is unconstitutional on its face but that the subsection may be severed from the rest of § 7.01.13, the court does not reach the Post's argument that the notice provision of § 7.01.13(E) improperly gives the Board unfettered authority to apply it "in favor of unspecified 'appropriate persons.'" (Doc. 24 at 17).

[20] This conclusion assumes the Post has a federally protected right to sell alcoholic beverages. That the Post possesses such a protected property right, however, is questionable. See Walling Enterprises, Inc. v. Mathias, 636 So.2d 1294, 1296-97 (Fla. 1994) (stating that an alcoholic beverage license amounts to no

however, the Post cannot succeed with an as-applied due process claim as to the remainder of the distance requirements ordinance. Section 7.01.13, after the severance of § 7.01.13(E), forbids the sale and on-premises consumption of any type of alcohol within the prohibited zone, with no exceptions. This restriction, as previously discussed, is permissible on its face and as applied to the Post.  See also New York State Liquor Authority v. Bellanca, 452 U.S. 714, 715, 101 S.Ct. 2599, 2600, 69 L.Ed.2d 357 (1981) (indicating that state has "absolute power under the Twenty-First amendment to prohibit totally the sale of liquor within its boundaries")[21]; City of Daytona Beach v. Del Percio, 476 So.2d 197, 201 (Fla.1985) (stating that  "[t]he Florida Constitution and the statutes . . . imbue the [County] with the state's full police powers, including those under the Twenty-First Amendment.").

Under Florida law, to claim a vested right, the plaintiff must show either: "(1) that it has reasonably and detrimentally relied on existing law (equitable estoppel); or (2) that [the government] has acted in a clear display of bad faith." Seay, 397 F.3d at 948 (citing Coral Springs Street Systems, Inc., 371 F.3d at 1334). To successfully invoke the doctrine of equitable estoppel against a local government, a plaintiff must show that he "(1) in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired." Coral Springs Street Systems, Inc., 371 F.3d at 1334. As noted in Coral Springs Street Systems, Inc., the doctrine of equitable estoppel is "nothing more than an application of the rules of fair play." Id. (quoting Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 573 (Fla. 2nd DCA

---

more than the grant of a privilege; the license it is not property in the constitutional sense); Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1265 (11th Cir. 2003) (per curiam) (stating that plaintiff must show it has a federally protectable property right in order to establish a procedural due process claim because no such claim "exists until a sufficiently certain property right under state law is first shown.").

[21] The Twenty-First amendment, adopted in 1933, ended the fourteen-year era of Prohibition. It states in relevant part:
      Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.
      Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.
U.S. Const. XXI, §§ 1, 2.

1975)). Canvassing Florida cases in which equitable estoppel had been found, the Coral Springs Street Systems, Inc., court summarized numerous examples of "unfair dealing," all of which involved plaintiffs who had invested considerable sums of money in good faith reliance on zoning decisions or grants of permits only to have the authorities later rescind or reconsider their previous actions. Id.

The Florida Supreme Court has stated that an alcoholic beverage license is merely the grant of a privilege and, though the license may possess certain qualities of property in a commercial sense, it is not property in the constitutional sense. See Walling Enterprises, Inc. v. Mathias, 636 So.2d at 1296-97. Nevertheless, assuming, arguendo, that a vendor may possess a protected property interest in selling liquor, the court concludes that the Post is unable to establish that it has the vested right it claims or that the County should be equitably estopped from denying it the waiver it seeks. The Post has failed to establish that it changed its position to any degree, much less made such "a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy" any right it may have to sell liquor. See Coral Springs Street Systems, Inc., 371 F.3d at 1334.  Thus the Post has not shown that it is entitled to relief under the doctrine of equitable estoppel.  Nor has the Post alleged, or shown, that the County has acted in a clear display of bad faith.[22]  Accordingly, the court finds that the Post has no vested right in the sale of liquor for on-premises consumption.[23]

In summary, the court finds that § 7.01.13(E) of the Santa Rosa County Land

---

[22]  The Post's contention that no rational distinction can be made in the treatment of liquor sales and beer or wine sales at locations that are within 2500 feet of schools and churches warrants little discussion. As noted, the County is permitted to prohibit the sale of alcohol entirely within a reasonable distance of schools and churches.  That the County may choose to advance its interest in insulating schools and churches from establishments that serve alcoholic beverages by distinguishing between beverages that contain less than 6.243% alcohol and those that are even more potent and intoxicating is not irrational.  Rather, the distinction constitutes a legitimate exercise of the County's police powers and is within the State's broad grant of authority under the Twenty-First Amendment, as delegated to the County.  Moreover, it is consistent with the potency distinction recognized by the State of Florida in Fla.Stat. § 568.01, Alcoholic Content of Intoxicating Liquors ("For the purposes of this chapter [Intoxicating Liquors in Counties Where Prohibited], all liquors, wines, or beer containing more than 6.243 percent of alcohol by volume shall be deemed and held to be intoxicating liquors, wines, or beer and subject to the provisions of this chapter.").

[23]  The court expresses no opinion as to whether the Post could have a vested right to sell beer and wine.

Case No. 3:06cv152/MCR

Development, Waiver of Distance Requirements, is unconstitutional on its face and, perhaps, as applied to the Post but that § 7.01.13(E) is severable from the remainder of § 7.01.13.  The court further finds that § 7.01.13, as severed, survives the Post's facial and as-applied due process challenges, as presented in Counts III and IV of the complaint.  As the Post has failed to "demonstrate that there is indeed a material issue of fact that precludes summary judgment," Clark, 929 F.2d at 608, the County is entitled to judgment in its favor with respect to Counts III and IV.

**Counts II and V: Equal Protection Clause and Substantive Due Process**

Remaining are the Post's equal protection and substantive due process claims (set forth in Counts II and V of the complaint), which neither party has addressed in its summary judgment papers.

"A district court possesses the power to enter summary judgment sua sponte provided the losing party 'was on notice that she had to come forward with all of her evidence.'" Burton v. City of Belle Glade, 178 F.3d 1175, 1203-04 (11th Cir. 1999) (citation omitted); Massey v. Congress Life Insurance Co., 116 F.3d 1414, 1417 (11th Cir.1997) (stating that "[d]istrict courts unquestionably possess the power to trigger summary judgment on their own initiative," but must "ensure that the  parties receive adequate notice that they must bring forward all of their evidence").  In this case, the court issued an order and notice dated October 5, 2006, giving the parties a date certain to submit all evidentiary materials authorized to be filed under the Federal Rules of Civil Procedure. The court therefore believes that the parties have previously received adequate notice that they were required to bring forward all of their evidence in this case.  The court shall, however, require the parties to brief the issues relevant to the disposition of Counts II and V, with such memoranda to be filed no later than March 26, 2007.[24]

---

[24] Counts II and V of the complaint appear to be a facial claims as to which no additional evidence should be required.  If either party contends that it should be permitted to submit additional evidence relevant to either count, however, it should immediately so advise the court.  In any event, given the court's severance of § 7.01.13(E) from the remainder of the § 7.01.13, it appears that any additional facial claims regarding the invalidity of the ordinance may be moot.  Further, insofar as the Post may assert that its substantive due process claim also involves an as-applied challenge, such a claim would be foreclosed by McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994), and its progeny.  Executive, or nonlegislative, deprivations of state-created property rights, including land-use rights, "cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally." Greenbriar Village, 345 F.3d at 1263.

## Conclusion

As discussed above, the court concludes that the Post has failed to meet its summary judgment burden with respect to Count I of the complaint and that the County therefore is entitled to judgment in its favor.  Count I therefore is due to be dismissed with prejudice.  In addition, the court finds that § 7.01.13(E) of the Santa Rosa County Land Development, Waiver of Distance Requirements, is unconstitutional on its face and, perhaps, as applied to the Post but that in any event § 7.01.13(E) is severable from the remainder of § 7.01.13.  The court further finds that § 7.01.13, as severed, survives the Post's facial (Count III) and as-applied (Count IV) due process challenges and that the County is entitled to judgment in its favor with respect to those counts, which shall also be dismissed with prejudice.  Finally, the parties shall brief the issues presented in Counts II and V of the Post's complaint, filing their memoranda no later than March 26, 2007.

Accordingly, it is the ORDER of this court that:

1.      Section 7.01.13(E) of the Santa Rosa County Land Development, Waiver of Distance Requirements, is DECLARED unconstitutional and is SEVERED from the remainder of Section 7.01.13, which otherwise shall remain in place as enacted.

2.      The County's motion for partial summary judgment (doc. 26) is GRANTED, to the extent that Counts I, III, and IV of the Post's complaint are DISMISSED, with prejudice.

3.      The Post's motion for partial summary judgment (doc. 24) is DENIED.

4.      The parties shall file briefs on the issues relevant to the disposition of Counts II and V of the Post's complaint no later than March 26, 2007.

5.      The clerk shall defer entering judgment until the conclusion of the entire case.  DONE and ORDERED this 12th day of March, 2007.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

This matter remains set for trial April 16, 2007.  The parties are advised that it is the court's intention to rule upon the remaining claims as soon as practicable following receipt of their memoranda.

Case No. 3:06cv152/MCR